## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ERIK CHARLES SPEECE,

                Plaintiff

      v.

PRIMECARE MEDICAL, INC.,

             Defendant.

CIVIL ACTION NO. 3:24-CV-01712

(MEHALCHICK, J.)

### MEMORANDUM

Plaintiff Erik Charles Speece has filed an amended complaint (Doc. 13) regarding medical care he received at the Carbon County Correctional Facility ("CCCF"). Pursuant to 28 U.S.C. § 1915A, the Court finds that Speece's amended complaint fails to state a claim, but will grant him a final opportunity to file an amended complaint that raises Fourteenth Amendment claim(s) against individuals involved in his medical care.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The Court found that Speece's initial complaint failed to state a claim but granted him leave to file an amended complaint. *See* (Doc. 10). The Court received this amended complaint on February 25, 2025. (Doc. 13).

Speece alleges as follows: On June 21, 2023, he arrived at the CCCF as a pre-trial detainee, complaining of a broken right foot. He complained of pain "almost daily," and PrimeCare Medical, Inc. ("PrimeCare"), the facility medical provider, offered ibuprofen and acetaminophen. Despite his ongoing complaints of pain, no other medication was offered during his 16 months at the CCCF. In September 2023, he received an X-ray at the facility, which was "negative for a break but PrimeCare stated that they ordered an off-site MRI."

From September 2023 to February 2024, Speece "continued to ask" unspecified individuals about the pending MRI. He alleges that "[r]esponses were generally about the same[,] mostly in a 'standoffish' and 'withholding' manner." Eventually, Speece filed a grievance against PrimeCare, and received his MRI within a week. The MRI was "negative for an injury." Speece then requested a second, offsite X-ray, "which was administered fairly quickly," and showed "a break in the right foot."

In April 2024, Speece's left foot (the non-injured foot) "cracked and broke" as he was getting out of bed. He submitted a medical request that was "answered quicker than usual," which he attributes to the fact that a state inspection was ongoing at the time. "[A]lmost two full months" later, an outside specialist determined that both of Speece's feet had suffered hairline fractures, and that the fracture in the left foot was caused by "favoring the right [foot] for ten months." The doctor prescribed "what he called a 'bone stimulator' to heal both feet." However, "PrimeCare head nurse Rebecca scoffed at the doctor[']s prescription." Instead, she provided Speece with two "cam boots."[1] She assigned Speece to a bottom bunk, but not the "bottom tier" of the jail.

The boots made walking extremely difficult for Speece, and he asserts that they were "prescribed by PrimeCare to humiliate and not to heal." On his first time wearing them outside of the cell, Speece "slipped and barely caught himself from falling down the steps." He reported this incident to "Dana," another PrimeCare nurse, who advised him to wear only one boot at a time. Over time, using the stairs became "increasingly painful and [] difficult,"

---

[1] A cam boot is a "medical boot that completely surrounds the foot and ankle and comes up the shin to lock the ankle in place." *See Jenkins v. Chicago Transit Auth.*, No. 15 C 08415, 2020 WL 868535, at *2 n.1 (N.D. Ill. Feb. 20, 2020).

with or without the boots. Speece "would bring this to the attention of all PrimeCare staff during medication passes to no avail."

Speece names PrimeCare as the sole defendant, asserting a claim of medical negligence for its failure to properly diagnose and treat his foot injuries, and for prescribing him ibuprofen "for 16 months straight blatantly disregarding the potential long-term effects." He asserts that now, "both feet are swollen at all times, toes cannot be moved . . . and varying levels of pain are constant." Speece believes that he will need surgery to heal both feet, which would not have been required absent negligence by PrimeCare.

## II.    28 U.S.C. § 1915A Screening

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis. See* 28 U.S.C. § 1915(e)(2). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions

which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). The court may consider the facts alleged on the face of the amended complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be

construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

With these standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III.  DISCUSSION

Much of the Court's prior analysis of Speece's claim against PrimeCare applies equally to his amended complaint. Speece asserts a claim of medical negligence, but the complaint does not indicate a basis for federal jurisdiction over this state law claim. *See* 28 U.S.C. § 1331; *see also Cuney v. Spaulding*, No. 1:23-CV-200, 2023 WL 2188707, at *1 (M.D. Pa. Feb. 23, 2023) (dismissing at the screening stage for lack of subject matter jurisdiction).

As previously noted, any such claim would have to be supported by a certificate of merit pursuant to Pennsylvania Rule of Civil Procedure 1042.3:

(a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3; *see, e.g.*, *Riley v. Clark*, No. 4:20-CV-325, 2021 WL 11133351 (M.D. Pa. Dec. 23, 2021) (applying Rule 1042.3 to an action for medical negligence against PrimeCare). The Certificate of Merit would have had to be filed within 60 days of the original complaint, which was filed on October 8, 2024. *See* Pa. R. Civ. P. 1042.3(a). That time has already elapsed and is not reset by an amended complaint. *See Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 255 (E.D. Pa. 2008) (listing cases). Further, a court can only extend the deadline for a maximum of 60 days, *see* Pa. R. Civ. P. 1042.3(d), and that period has also elapsed. Accordingly, Speece's claim of medical negligence must be dismissed.[2]

Speece could have tried to assert a claim under 42 U.S.C. § 1983, for deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment.

---

[2] Speece alleges that "[s]ince it has been determined by a medical professional outside of PrimeCare that the left foot broke because of favoring the right one for such a long period of time, this proves negligence on the part of PrimeCare." To the extent this was intended to comply with Rule 1042.3, the statement does not satisfy the requirements of the rule and would have been untimely regardless.

Generally, such a claim requires a showing of (1) "a serious medical need" and (2) "acts or omissions by [individuals] that indicate a deliberate indifference to that need." *See Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023). An entity that contracts with a municipality, such as PrimeCare, is only liable under § 1983 if a policy or custom of that entity caused the violation in question. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580 (3d Cir. 2003). Therefore, a plaintiff may state a claim if the complaint indicates some policy or custom of denying or intentionally delaying necessary medical care for non-medical reasons. *See*, *e.g.*, *Johnson v. Stempler*, No. CIV A 00-711, 2007 WL 984454, at *4 (E.D. Pa. Mar. 27, 2007).

As in the prior complaint, Speece alleges that an MRI was delayed for several months until he filed a grievance; that a follow-up X-ray was administered "fairly quickly"; and that a medical request was responded to "quicker than usual." However, none of these allegations suggest a consistent policy or custom of intentionally delaying necessary treatment.[3] Moreover, "failure to perform x-rays or order additional diagnostic tests does not rise to the level" of deliberate indifference. *See Johnson v. Cash*, 557 F. App'x 102, 104 (3d Cir. 2013). Speece objects to various aspects of his treatment itself, including the denial of the "bone stimulator," the prescription of the cam boots, the allegedly excessive use of ibuprofen, and the failure to place him on the bottom tier of the jail. He attributes many of these acts or omissions to "PrimeCare," but again fails to plead facts indicating that these actions were

---

[3] Speece opines that his MRI "could have been taken care of within a week" because it was performed onsite, but does not allege intentional delay or facts indicating that a PrimeCare policy or custom was responsible for the delay. He also maintains that the initial X-ray did not reveal his injury "due to very old equipment" at the CCCF, but the complaint offers no factual basis for that inference.

caused by a PrimeCare policy or custom, rather than the decisions of the individual providers. On these facts, any viable claim(s) lie against the individual providers, not PrimeCare.

## IV.   CONCLUSION

Speece's complaint suggests potential Fourteenth Amendment claims against individual nurses based on their failure to respond to his serious medical needs. However, none of those individuals are named as defendants. Accordingly, to the extent Speece wants to pursue claims against any individual provider, he will be granted one final opportunity to file an amended complaint. Any such complaint must clearly identify the intended defendants and describe the specific actions that each individual took or failed to take that suggest deliberate indifference. Allegations against "PrimeCare" generally, or "PrimeCare staff," are not sufficient. Deliberate indifference may include intentionally delaying or refusing to provide treatment, or persisting with treatment the provider knows is ineffective, but does not include mere negligence or disagreement with a course of treatment, even if Speece or another provider suggested a different course.[4] *See* Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Dated: April 29, 2025                                         *s/ Karoline Mehalchick*
                                                             **KAROLINE MEHALCHICK**
                                                             **United States District Judge**

---

[4] For example, the allegation that Rebecca prescribed cam boots instead of the bone stimulator does not itself show deliberate indifference. *See Folk v. United States*, No. 3:22-CV-599, 2024 WL 233227, at *9 (M.D. Pa. Jan. 22, 2024) ("The mere fact that an outside medical specialist recommended a certain treatment, and prison doctors opted to attempt another treatment first, does not amount to deliberate indifference.") (record citation omitted); *see also King v. Cnty. of Gloucester*, 302 F. App'x 92, 97 (3d Cir. 2008) ("Deliberate indifference requires more than inadequate medical attention or incomplete medical treatment.").