**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

ERIK CHARLES SPEECE,

Plaintiff

v.

PRIME CARE SUPERVISING NURSE REBECCA, *et al.*,

Defendants.

CIVIL ACTION NO. 3:24-CV-01712

(MEHALCHICK, J.)

**MEMORANDUM**

Plaintiff Erik Charles Speece alleges that four nurses were deliberately indifferent to his medical needs while he was incarcerated at the Carbon County Correctional Facility ("CCCF") in 2023 and 2024. The defendants have now moved for summary judgment (Doc. 23), and Speece has not responded. Because the record shows that Speece received treatment for his foot injuries, and any delay or perceived error in his care did not rise to the level of deliberate indifference, the Court will grant summary judgment to the defendants.

## I. BACKGROUND AND PROCEDURAL HISTORY

Speece began this case by filing a complaint on October 8, 2024 (Doc. 1), and he has been granted leave to proceed *in forma pauperis* (Doc. 10). He now proceeds on a second amended complaint (Doc. 16).

In brief, the operative complaint alleges that Speece arrived at the CCCF as a pretrial detainee on June 21, 2023, complaining of a broken right foot. Speece claims he was given only ibuprofen and acetaminophen, which were ineffective, and a scheduled MRI and X-ray were unduly delayed. In April 2024, Speech broke his left foot descending from a bunk, which he attributes in part to a lack of treatment for his right foot. The medical staff did not follow

the recommendations of an outside provider to treat both feet with a "bone stimulator"; although staff provided him with walking boots for both feet, walking became "increasingly painful and more difficult." Speece alleges that his feet "are both swollen, extremely painful, numb, and [his] toes cannot be moved to this day." *See* (Doc. 16).

Upon screening of the operative complaint pursuant to 28 U.S.C. § 1915A, Speece was permitted to proceed on Fourteenth Amendment claims against four nurses who treated him at the CCCF: Rebecca Sisson (identified as "PrimeCare Supervising Nurse Rebecca"), Amelia Hotaling, Dana Hunsinger (identified as "PrimeCare Nurse Dana"), and Heather Gable (identified as "PrimeCare Nurse Heather"). *See* (Doc. 17; Doc. 23). On November 10, 2025, after the close of discovery, the defendants moved for summary judgment. Speece did not respond within the time allotted. The Court entered an order extending the response deadline to January 2, 2026, and warning that if Speece did not respond, the motion would be deemed unopposed. (Doc. 26). That order, sent to Speece's last-known address at SCI-Frackville, was returned to sender with a notation that Speece had been paroled. *See* (Doc. 27). Speece has not responded and did not provide the Court with a current address.

## II. LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-

moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife*

*Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment.").

Although this motion is unopposed, the Court must still review the record to establish "that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990). The Court has considered the properly supported facts presented in Defendants' statement of facts and has also reviewed and considered the entirety of the record. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

## III. MATERIAL FACTS

The record indicates as follows: On June 21, 2023, Speece was arrested, taken to the CCCF, and immediately transferred to an emergency room. Emergency room records indicate that after being arrested, Speece "was noted to be banging his head off the partition in the police vehicle." Speece was treated in an intensive care unit and diagnosed with multiple fractures in his head, among other injuries. The following day, June 22, he was transferred back to the CCCF. The hospital records, and the notes from intake screening at the CCCF, do not document any complaints or treatment relating to Speece's feet. *See* (Doc. 24-2 at 2-12, 35-36).

Between June 22, 2023, and July 24, 2023, Speece did not make any request for care to his feet. He had 18 interactions with medical staff during this period, most of which related to his mental health, and none of which related to his feet. *See* (Doc. 24-2 at 15-16). On July 25, he submitted an Inmate Request Form to the prison, in which he requested "to have my right foot x-rayed. It was supposed to be x-rayed a few weeks ago but I guess you guys forgot. I still have a lot of pain in my right foot on the top and the bottom." (Doc. 24-2 at 34). An x-ray was performed on July 28, 2023; the report showed no fracture, but "[c]orrelation with an MRI examination [was] recommended as needed to rule out ligamentous derangement." (Doc. 24-2 at 23). On August 1 and August 3, 2023, Speece complained of ankle pain to nurse Tracy Kenion, a non-party; an unspecified provider prescribed ibuprofen. (Doc. 24-2 at 14).

The record does not document any further complaint about Speece's foot until December 9, 2023, when he wrote to medical staff: "My foot has felt like it's broken since June. I had x-rays done and they show it is not broken. Could I have torn ligaments or muscles? I can hardly bend my toes." (Doc. 24-2 at 30). Speece was examined by Defendant Hotaling on December 13. At that appointment, he claimed that he had pain and numbness in his right foot "since June/July. Unsure if he injured the foot prior to [admission] as he was disoriented." Hotaling observed that Speece's foot was tender and he had decreased range of motion in his toes; the medical notes indicate that the "plan" was for Speece to receive an MRI. *See* (Doc. 24-2 at 29).

Approximately three months passed before Speece received the MRI. Although Defendants claim that Speece never filed a prison grievance about his foot issues, the following grievance dated February 26, 2024, is attached to his original complaint:

> I thought I had broken my right foot when I first arrived at CCCF. Medical performed an x-ray in September and stated that it wasn't broken and left it at

> that. I requested something more be done and they said I need an MRI. That was nearly 2 months ago. I understand that you cannot tell me when or where an appointment is for security reasons but I'd like to know if one is even scheduled. My entire foot is numb and I can barely bend my toes.

(Doc. 1-2). Speece further alleged that he discussed the matter with "Nurse Aubrey" on January 27, who responded "It's being taken care of"; with "Nurse Dana" on February 22, who said "Put in a slip"; and with "Sergeant Horn" on February 26, who said "I will e-mail Rebecca." (Doc. 1-2). On February 26, he also discussed his ongoing foot pain with nurse Kenion. (Doc. 24-2 at 13).

Speece received the MRI on March 5. The record shows that on the same date, a response to Speece's grievance was signed by "Rebeca," with no last name legible, reading as follows: "I apologize for the delay in care. We try our hardest to get patients in as soon as possible. Once we have results . . . we will let you know." (Doc. 1-2). The MRI ultimately revealed "subtle incomplete healing stress fracture of the second metatarsal shaft without significant surrounding bone marrow edema." (Doc. 24-2 at 38). On March 28, 2024, Hotaling set up an orthopedic consultation, which was held on April 8, 2024.

At the April 8 consultation, Dr. Robert Grob ordered another x-ray, assessed Speece with "symptoms of tarsal tunnel syndrome," and determined that Speece would "have to follow up with foot and ankle to discuss this in further detail." On April 17, Hotaling noted the diagnosis and directed Speece to follow up with a foot and ankle specialist after his release. On April 20, at an appointment for an unrelated matter, Hotaling noted that Speece had a "normal gait." *See* (Doc. 24-2 at 28, 39-41).

Roughly one month later, on May 16, Speece reported that his left foot (the previously uninjured foot) was "now going numb and has shooting pain." An orthopedic consultation was scheduled for June 24; in the interim, Hotaling evaluated Speece on May 29, prescribed

ibuprofen, and directed Speece to follow up as needed. (Doc. 24-2 at 19, 27, 31). The orthopedic practice determined that Speece should be evaluated by a podiatrist, and Speece met with a podiatrist on June 28. (Doc. 24-2 at 13).

The podiatrist, Dr. Alexander Southard Newton, found a fracture in Speece's right foot that was "chronic and seems to be stable in nature." On the left foot, he assessed a stress fracture and prescribed a bone stimulator and CAM boot. Speece was to "weight bear as tolerated" for six weeks, and Dr. Newton "recommended" that he ice the foot three times a day. (Doc. 24-2 at 41-46).[1] A follow-up x-ray, taken on July 3, showed "Healing likely stress fracture of the third metatarsal" of the left foot, and "Normal right foot." On July 11, Defendant Sisson issued two CAM boots to Speece. (Doc. 24-2 at 21, 24, 41-46).

After Speece received the CAM boots, the record does not indicate any further complaint about his feet. On October 24, 2024, he was seen by non-party nurse Tyra Simmons for a "CAM boot check"; Simmons noted that Speece was not wearing any boot, and "educated [Speece] on the need to wear a CAM boot while walking." It appears that at a similar appointment the following week, Speece was noted to be wearing his boot. *See* (Doc. 24-2 at 33). The record does not indicate how long Speece wore the CAM boot(s) or at what point he ultimately left the CCCF.

---

[1] Defendants contend that Hotaling also "evaluated" Speece on July 2, a few days after the podiatrist visit, but the evidence cited for that fact does not support it. The relevant medical note merely summarizes the recommendations of the podiatrist. *See* (Doc. 24-2 at 26-27).

## IV. DISCUSSION

### A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

As an initial matter, Defendants seek summary judgment for Speece's failure to exhaust administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). The defendant has the burden to prove a failure to exhaust available remedies. *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018).

Defendants argue that they are entitled to summary judgment based on Speece's alleged failure to respond to their requests for admission. *See* (Doc. 24, ¶¶ 30, 72; Doc. 24-3). Generally, if a party does not respond to requests for admission, the matter is deemed admitted. *See* Fed. R. Civ. P. 36(a)(3). "Matters deemed admitted due to a party's failure to respond to requests for admission are 'conclusively established' [...] and may support a summary judgment motion." *Sec'y U.S. Dep't of Labor v. Kwasny*, 853 F.3d 87, 91 (3d Cir. 2017) (quoting Fed. R. Civ. P. 36(b)).

In this case, Defendants requested that Speece admit he "did not file any grievances regarding" his left foot or his right foot. (Doc. 24-3, ¶¶ 7, 23). In their statement of facts, they claim that Speece failed to respond to these requests; however, they have not presented any evidence in support of that assertion, so it is not accepted for purposes of this motion. *See* (Doc. 24, ¶ 15), Fed. R. Civ. P. 56(c)(1); *cf. Petrunich v. Sun Bldg. Sys., Inc.*, No. 3:04-CV-2234,

2006 WL 2788208, at *3 (M.D. Pa. Sept. 26, 2006) (attorney's declaration established that opposing party failed to respond to requests for admission). As noted above, the record indicates that Speece did file a grievance. Defendants offer no other evidence supporting their theory that Speece failed to exhaust administrative remedies; therefore, they are not entitled to summary judgment on this ground.

B. DELIBERATE INDIFFERENCE

Speece proceeds on Fourteenth Amendment claims of deliberate indifference to a serious medical need. Such claims are evaluated under the same standard as the Eighth Amendment claims of convicted prisoners; the pretrial detainee must show that he was harmed by the defendant's deliberate indifference to his serious medical needs. *See Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Courts have found deliberate indifference where a prison official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted). Speece's claims essentially fall into two categories: that the defendants improperly delayed his care, and that the care he received was constitutionally inadequate.

Turning first to Speece's MRI, the record shows a delay of less than three months from December 13, 2023, when Hotaling recommended it, to March 5, 2024, when it was ultimately performed. Although frustrating to Speece, a delay of this length does not itself show deliberate indifference. *See, e.g.*, *Rhines v. Bledsoe*, 388 F. App'x 225, 226 (3d Cir. 2010) (no deliberate indifference where the "need for an MRI was noted" in October 2007 but not

performed until March 2008). Although Speece claims he was constantly requesting treatment and testing for his foot during this delay, he has not presented competent evidence of that. His unverified allegations in his own grievance about various complaints to staff cannot be used as evidence of the truth of those allegations. *See Travillion v. Wetzel*, No. 24-1763, 2025 WL 971669, at *2-3 (3d Cir. Apr. 1, 2025) ("[W]hile prison grievances themselves may be considered on summary judgment as 'documents,' the statements contained therein are not competent evidence if they are unsworn and not made under penalty of perjury.").The record does not indicate a clear reason for the delay, but Speece has not presented evidence that the nurses were to blame for the delay or that it was imposed for a "non-medical reason." *See, e.g.*, *McMillan v. Steberger*, No. 5:23-CV-04078-JMG, 2025 WL 1908046, at *6-7 (E.D. Pa. July 10, 2025) ("To establish deliberate indifference here, Plaintiff must show that the delay 'was motivated by non-medical factors.'") (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017)).[2]

Speece takes further issue with other aspects of his care, but he has not demonstrated deliberate indifference by any defendant. First, he objects to the fact that he was prescribed "ibuprofen and/or acetaminophen twice daily for 16 months straight," despite "potential long-term effects." But the record does not indicate that any defendant prescribed these medications for any more than occasional periods; that Speece objected to the medications;

---

[2] Nor has Speece shown evidence of any significant delay in receiving x-rays. His unverified, July 25, 2023, statement that his foot was "supposed to be x-rayed a few weeks ago" is not competent evidence of the truth of that statement; even if it was, his vague allegation that unspecified staff "forgot" the x-ray would not show deliberate indifference or the personal involvement of any defendant.

that the nurses believed that prescribing the medications would put him at risk of harm; or that he ultimately suffered any harm from the medications.

Further, there is no evidence supporting Speece's speculation that inadequate treatment of his right foot caused the May 2024 injury to his left foot. Even if it did, that would not show deliberate indifference, because the nature of his right foot injury was unclear. As recently as April 2024, Dr. Grob indicated that the symptoms in his right foot were caused by nerve damage, not a fracture. Any alleged misdiagnosis by a nurse who relied on that doctor's opinion would not be deliberate indifference. *See Coudriet v. Vardaro*, 545 F. App'x 99, 103 (3d Cir. 2013).

Speece objects to the fact that the nurses did not fully implement Dr. Newton's June 2024 recommendation to treat his broken left foot with a bone stimulator and regular icing. But the fact that medical staff diverged from another doctor's recommended course of treatment does not itself show deliberate indifference. *See Johnson v. Cash*, 557 F. App'x 102, 103-04 (3d Cir. 2013); *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("There may, for example, be several acceptable ways to treat an [injury]."). The record does not show how Speece was harmed by any purported deficiency in treatment after June 2024. Although Speece now alleges that he had difficulty walking in the CAM boot(s) and should have been placed in a lower tier of the prison, there is no evidence that he complained about these issues at the time, nor evidence supporting his claim that both feet "require painful surgery" because of these perceived errors.

In sum, the record shows that medical staff promptly responded to Speece's sporadic complaints about his feet; that he received an MRI and numerous x-rays to diagnose the problems; and that he was evaluated by multiple outside providers, who themselves reached

conflicting diagnoses. A patient with a chronic injury could always argue that he should have been treated better or more quickly, but "'[f]or better or worse, prisoners aren't constitutionally entitled to their preferred treatment plan or to medical care that is great, or even very good.' And sometimes keeping an eye on a problem without doing more is a reasonable choice." *DiFraia v. Ransom*, 171 F.4th 622, 629 (3d Cir. 2026) (citation omitted); *see also Kokinda v. Pennsylvania Dep't of Corr.*, 797 F. App'x 69, 72 (3d Cir. 2019) (the Constitution "does not require a perfect, immediate diagnosis," and a conservative approach to non-emergency treatment is "constitutionally unobjectionable"). Despite any perceived error in how Defendants addressed Speece's foot issues, the record does not show that they violated his Fourteenth Amendment rights.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment. An appropriate order follows.

**Dated: August 6, 2026**

s/ Karoline Mehalchick

**KAROLINE MEHALCHICK**
**United States District Judge**